No. 4387

First Circuit Appeal

---

JOSEPH GAUBERT v. LEON GAUBERT

---

(February 18, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Surveyors and Surveys—Par. 5.**

Where the dividing line placed by the surveyor appointed by the court impinges or encroaches on old contiguous estates the dividing line in question very likely has not followed government bearings, courses and distances, and consequently is undoubtedly erroneous.

2. **Louisiana Digest—Surveyors and Surveys—Par. 3, 4, 9.**

The government bearings, courses and distances of grants and claims must be observed as to their outward markings for all purposes, unless proved to be erroneous and based on mistakes made by measurements from other government corners, bearings, courses and

distances of the most unmistakable character.

3. **Louisiana Digest—Surveyors and Surveys—Par. 25.**

Where the result of a survey ordered by the court is clearly erroneous and incomplete, the case will be remanded for further information.

4. **Louisiana Digest—Surveyors and Surveys—Par. 27.**

The costs incurred in a boundary suit are divided equally where there is no proof of a demand on the one side and a refusal on the other to settle the dispute amicably.

Appeal from the Twentieth Judicial District, Parish of Lafourche, Hon. H. M. Wallace, Jr., Judge.

This is a suit to establish a boundary line which should divide the estates of the plaintiff and defendant into two equal parts.

There was judgment approving the dividing line run by the surveyor appointed by the court, and the defendant appealed.

Judgment set aside and case remanded for further information.

J. A. Coignet and Howell and Wortham of Thibodaux, attorneys for plaintiff, appellee.

Caillouet & Caillouet, of Thibodaux, attorneys for defendant, appellant.

ELLIOTT, J. This is a suit between Joseph Gaubert and Leon Gaubert concerning the proper location of the dividing line which should divide into two equal parts between them.

"The lower half of a certain tract of land on the right descending bank of Bayou Lafourche, measuring 2 arpents front by 40 arpents in depth between parallel lines, bounded above and below by lands formerly belonging to Joseph Caesar, but now to present vendors."

As stated, it is the lower half of the above two-arpent tract which is to be divided. The description of the two-arpent tract has been copied from the title from P. W. Lefort and Mrs. Eulalie Marie Bourgeois, wife of Philip J. Chapuis, to Joseph Bergeron and Leon Gaubert, dated March 9, 1909. In the answer of Leon Gaubert to the suit of Joseph Gaubert to have divided the said lower half which they own in indivision, he consents that the land be divided by a boundary line between them.

A survey for the purpose was ordered by the court and J. R. Webb, surveyor, was appointed to establish the dividing line.

A line run by Mr. Webb, pursuant to the appointment of the court is favored by the plaintiff but opposed by the defendant.

Leon Gaubert in his opposition to the dividing line run by Webb alleges an existing established line which already divides said tract between him and Joseph Gaubert and pleads in support of the previously established line the prescriptions of ten and thirty years and prays for the recognition of the same; but he opposes the line run by Webb as being erroneous and contrary to their title, etc.

The district judge, after hearing the testimony, approved the dividing line run by Webb and the defendant appealed.

The contention of Leon Gaubert in his opposition to the Webb line, that a dividing line had been already and previously established between them, cannot be reconciled with his answer to the suit for division in which he consents that a dividing line be run between them. The evidence shows that no line dividing this lower half of the above mentioned tract between the co-owners thereof has ever been run or established in the manner and form prescribed by law; consequently defendant's contentions about an old-established and existing dividing line, dividing the lower half of said above mentioned tract,

must be put aside as having no merit; but this still leaves defendant's opposition to the Webb line that it is incorrect and not in conformity with their title, etc.

. The evidence of Mr. Webb, the surveyor, who ran the line which is in contest, shows that the tract of land to be divided is part of the grant or headright claim No. 116, T. 15, S. R. 17 E., situated on the right descending bank of Bayou Lafourche, that is, on the north side of the bayou. He testified that in order to find the place where the line in question should be he started at a point on the railroad which we take to be from his evidence and the maps and diagrams found in the record, the southeast corner of grant or headright claim No. 11 on Bayou Lafourche. We think from his evidence that his starting point at this place was a proved government corner. Following his evidence and return, he, from this starting point, measured down the bayou meandering its course to a point where he stopped. This stopping place he took to be the southwest corner of grant or headright claim No. 116. He did not find any government mark or corner at this place and did not search for any. He was told by people assembled there that previous surveyors had accepted the place as the southwest corner of grant No. 116, but he made no effort to prove the fact, except that he had measured to the place from his starting place up the bayou. From this place, taken by him to be the southwest corner of grant or headright No. 116, he measured back along the bayou to the place where he commenced the southern or bayou end of the dividing line in question. The place of commencement on the bayou of the dividing line to be run depends as to whether it is correct or not, on whether the place he measured from as the southwest corner of grant or headright 116 was in fact that corner. We have stated that the only fact supporting

the place as the true corner is a long meander line down the bayou from the southeast corner of grant or headright No. 11 so long that an error in distance could almost be expected to some extent. If his line down the bayou from headright or claim No. 11 is true in point of distance, then his point of commencement is all right, but it would have been better and safer if he had searched along the bayou south of the claim or headright No. 116 until he found a proved government corner and from there measured back up the bayou so as to tie with the line he had run south if possible at the southwest corner of the claim or grant No. 116. If this had been done the southwest corner of the claim or grant No. 116 could have been located from government starting points with more certainty than was done.

As for the swamp or northern end of the dividing line, he found the northeast corner of the grant, or claim No. 12, a proved government corner. Measuring from there down the swamp, as we understand his return, following government courses and distances until he came to the place which from the distance he had come he calculated was the northwest corner of the claim or grant No. 116. He did not find any proved or government marks at the place indicating that the place was the corner he took it to be, and he did not search for any. But taking it as the northwest corner of the grant No. 116, he measured back through the swamp to the place where he decided from the distance he had come was the swamp or northern end of the dividing line he had been appointed to run:

If his meander line down the swamp from the grant or claim No. 12 was true, then his points or stopping places are all right; but the swamp line he ran in order to reach these points was so long that some error must be rather expected.

It would have been better and safer if he had found, in addition to the proved point at grant or section 12, a proved point or corner further on down the swamp from the northwest corner of claim No. 116 and had measured back from there up to the place where the northwest corner of claim No. 116 was supposed to be so as to tie, if possible, with the line he had run from claim No. 12. If this had been done, then the northwest corner of claim No. 116 would have been established with more certainty than was done. As regards the best way to establish government or proved corners and the importance of doing so in surveys like that Mr. Webb was called on to do, we cite the decisions of the Supreme Court in Smith vs. Almond, 157 La. 265, 102 South. 330, and Houston Ice and Brewing Co. vs. Murray Oil Co., 149 La. 228. Having, as we understand his return, original and supplemental and plan or blue print, and his testimony on the subject, thus determined where the end of the dividing line should commence on the bayou and end in the swamp, he ran the dividing line, and in so doing followed a course S. 16 degrees and 5 minutes W., instead of S. 15 degrees W. called for by the government field notes as the course of the side lines of the grant No. 116 in which the land and line in question is situated. And although he returns and testifies that the dividing line he ran has two government corners for its support, the total course of his line does not connect up with the claim or grant No. 12 but misses it 146 feet short and S. 80 degrees 35 minutes E.

The testimony of witnesses in the record shows that the dividing line which Mr. Webb ran will, if adopted, place Leon Gaubert in conflict with old and well-established contiguous estates, and to the extent of the conflict he must either give up or contend with a result we cannot undertake to foresee; but the fact that the Webb line impinges or encroaches on old contiguous estates argues against it.

Mr. Webb supports his line with the following statement which we quote from his supplemental return and process verbal:

"I set a stake at this point, then ran as per notes of Sulakowski S. 15 degrees W. to the 40-arpent line."

If we understand him, he refers to the northwest corner of claim or grant No. 116. Thence, continuing:

"There I made search for bearing trees and failed to find any; so I ran the rear of the lots up the 40-arpent line towards the railroad track looking at each corner until I reached the line between Sections 11 and 12. I was S. 80 degrees 35 minutes E. 146 feet from said corner. In other words, I was too far down the bayou with my random line between Sections 116 and 16, and in order to give to each section the distance called for by the notes and the approved map, it was necessary for me to change the direction of the line from Bayou Lafourche, and by calculation I find the course of this line to be S. 16 degrees 5 minutes W., and by making the line bear that course it gives to every section the frontage along Bayou Lafourche and in the rear along the 40-arpent line, the same and full distances as called for in the attached and approved field notes."

If the surveyor in running the dividing line in question has not followed government bearings, courses and distances, impingement on the old-established contiguous tracts established with reference to government bearings, courses and distances is unavoidable and such should not be.

It may be that the government courses and distances in some respects and instances are based on errors and mistakes. But be that as it may, the old-established corners, courses, bearings and distances of these government grants and claims cannot be changed now in a survey for the purpose of dividing tract which forms part of one of these grants and claims; to allow that will be to disturb the holders

and owners and possessions in all the adjoining grants and claims.

It is unfortunate that we are unable to approve the dividing line as was done by the lower court; but we cannot approve a line between the parties which, according to the testimony of the surveyor and his returns and blue print showing his work, rather appears to be wrong than right. The surveyor worked hard, and in testifying earnestly tried to make the dividing line her an clear, but his examination has not done so to our satisfaction. As already stated, we think an effort should be made to locate with more certainty the southwest and northwest corners of the claim or grant No. 116 along the lines indicated in this opinion.

If no further proof can be found, then let that fact be returned to the court. We think the government bearings, courses and distances of these grants and claims must be observed as to their outward markings for all purposes, unless proved to be erroneous and based on mistakes by measurements from other government corners, bearings, courses and distances of the most unmistakable character. As for the dividing line in question, we would like to know whether the result of its present location impinges, if at all, on the adjoining tracts next to the bayou and in the swamp to the depth of 40 arpents, and if so to what extent on each site from bayou to swamp.

We wish to know to what extent Joseph Gaubert and Leon Gaubert will each suffer or gain by the line as presently located by a blue print and map with distances measured thereon.

We notice that the surveyor did not run the dividing line parallel to either side of the tract, which was correct, because the tract is to be equally divided and the line should run in the middle of the tract, giving to each the same quantity and area front and rear.

We are unable in the present state of the record to render a final judgment as to the rights of the parties.

We have decided to set the judgment appealed from aside and remand the case for futher information, to the end that the lower court, as well as this court, may have in deciding the case the benefit of the further information.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided, reversed and set aside and the case is now remanded to the lower court, to be returned to the docket; and we request that our suggestions as to further proof as to the corners of the grant or claim No. 116 be complied with; that the further and additional information requested be supplied and placed in the record to be acted on by the lower court, and after which, in case of an appeal, we will be in position to render a final judgment in the matter. As for the cost incurred, it is ordered that the cost in both courts be divided equally between the plaintiff and defendant. For the purposes of this remand, the lower court will appoint any surveyor it deems best.