On Rehearing.
McINNIS, Judge ad ho.c! \
We granted a rehearing in this case because appellee convinced us that we had fallen into error in our consideration of the testimony of Henry M.'Messinger, registered surveyor, in connection with á plat of a survey he had made before this suit was filed, at the request of appellee. ■
The issues are set forth in our original opinion, and need not be repeated here.
Trial of this case was commenced March 12, 1952, when .after hearing some testimony and after a surveyor, H. M. M!es- ■ singer, .had been called as a witness, the trial judge concluded that he would .not be able to fix any boundary line between the properties of plaintiff and defendant, *535 and, on his own motion, over objection of plaintiff, ordered a survey to be made, the effect of which was to convert the action from a possessory action to an action to fix the ideal boundary between the properties. At that time the court, while denying the injunction prayed for, ordered that the status quo be maintained until the case could be tried and decided. On June 7, 1952, plaintiff filed an amended petition, in which it is alleged that defendant did not observe the order of the court, but on the contrary, continued to disturb plaintiff’s possession, and' plaintiff increased the demand for damages. The case was refixed for trial June 27, 1952, at which time the trial of the case was again taken up, but not having been completed, was continued to July 14, 1952; however, the next action was on November 3, 1952, at which time the case was again set for trial November 15, 1952, on which date the hearing was concluded, and on June 30, 1953, judgment was rendered and signed, rejecting plaintiff’s demands and dismissing her suit at her costs, except that defendant was'taxed with one-half the costs of the Benjamin survey.
The district judge admits in his written opinion that he was in error in converting the action to one of boundary, however, he rejected the lay testimony as to the ancient boundary of the two properties. He also rejected the expert testimony, first, because it was in conflict, and second, because of the plaintiff’s objection to the conversion of the action to one of boundary, which objection was sustained in the opinion, and he concludes that this “leaves the situation in status quo ante.”
We are not at this time concerned with the ideal boundary between the lands of plaintiff and defendant, but with, an apparent boundary to which plaintiff has possessed for more than a year prior to disturbance.
The record supports the following finding of facts: At the time the deed was executed to plaintiff in November, 1943, there was a gravel road running in a north-south direction, very near the east line of NE]4’ of SE]4 (Lot 7) Section 9, Township 23 North, Range 1,1 East. This road was intersected, but not crossed, by a gravel road running east and dividing the N% of SW ¾, Section 10, Township 23 North, Range 11 East, from S% of NW]4, Section 10, Township 23 North, Range 11 East. Plaintiff also owns N½ of SWJ4, Section 10, Township 23 North, Range 11 East, and owners on each side of the road recognize the road as the half section line. A projected line, continuing from the center of this intersecting road will extend weA to divide plaintiff’s property from that of defendant, where plaintiff claims the boundary between the properties is located. At the time plaintiff purchased NE]4 of SE]4 (Lot 7), Section 9, Township 23 North, Range 11 East, the land-was cleared and in cultivation to this projected line, and the land of defendant down to that line was not cleared, but was in timber. There is a fence enclosing a small pasture of some four acres, the north line of which follows the projected line, center of the east-west gravel road, about 150 feet to the west. Plaintiff possessed and used this pasture and the land to the west of it, up to the line projected to the west from the center .line of the gravel road, and the north line of the fence. This finding is supported by the testimony of the following witnesses for plaintiff.
Doc Nelson Smith owns the land on the north side of the east-west road and he says the road is on the half- section line between his land and that of plaintiff. He helped cut the right-of-way for the road, and he says there were markings on the trees indicating a land line. He bought the land he owns from Donald Fiske and Joe Kelly and they used the road as the line.
Estus Shows owns land south of plaintiff’s land and , has known plaintiff’s land since 1933. He understood the road was on the half section line established a long time ago by a surveyor named F. N. Bull.
Percy Gunter helped the surveyor, F. N. Bull, to survey the line and he says it is in the center of the road. He helped clear *536 the land south of the road while his father owned it.
Roy Walls helped surveyor Bull when he surveyed the line. He believes it was in 1935, and he says the line is the center of the east-west road.
Leo Meziere farmed the land of plaintiff in 1945 and he says it had been worked before up to the line claimed by plaintiff. He says the boundary claimed by plaintiff is in line with other boundary lines in the area, and recognized by other owners, except defendant.
C. L. Jones says plaintiff had possession of and worked the land to what he called the old line, and that defendant moved down over the old line sixty or seventy steps.
Alfred Ratcliff says defendant took possession to ninety feet south of the old line, and plowed the land in controversy.
Kermit F. Edwards owns land a mile north of plaintiff’s land and has plowed the land in dispute for tenants. He says the Messinger line is ninety feet or more south of the old line.
Dr. Bumgardner, father of and agent for plaintiff, says when he bought the land the line he claims was pointed out to him as the boundary, and he took possession of it and had it farmed. •
In contradiction of the evidence of plaintiff’s witnesses the following testified on behalf of defendant.
Defendant says there was nothing to show where the line was, except the short fence of plaintiff. No line was poirlted out to him when he bought the land. Most of it had not been cleared when he bought it.
Joe T. Kelly, defendant’s vendor, says he did not recognize any line between the land sold and that of plaintiff, but he admits recognizing the east-west road as the boundary between plaintiff and Smith. He did not show defendant the land at the time he sold it.
Monte Boyte, school bus driver, travels the north-south road, which is very near the east line of Lot 7, turning near the northeast corner to the northwest, and crossing defendant’s land. He says the land in controversy has not been cultivated for the past several years, but there is a pasture fence extending a short distance west from the gravel road. He says he knows nothing of an established line.
The testimony of C. L. and J. W. Mason is about the same and to the effect that there was nothing to indicate a boundary except the short pasture fence referred to by other witnesses. They knew about Gun-ter, a former owner of Lot 7 clearing and working the land up to the projection of a line from the center of the east-west road. They say the Holder land was not cleared to the line at that time. They are not very familiar with the lands involved.
C. R. Foster, defendant’s tenant, says there was no definite line until Messinger surveyed the land. He says he put the trees on plaintiff’s land.
Felix Smith works for a state highway department engineering crew as rodman and chairman. He helped cut the right-of-way fo,r the east-west road. He doesn’t know about it being a recognized land line, but Gunter claimed it as line and cleared and cultivated it. He says the land in controversy had been plowed in the last day or two from the.time he testified:
The testimony of Wm. B. Benjamin, the surveyor appointed by the court, if admissible, which we' do not believe it is in this case, is of little or no value, for the reason that he was trying to establish a compromise boundary that he hoped all parties would accept.
We have referred to' the testimony of nine witnesses for plaintiff and nine for defendant, if the testimony of the two surveyors, Messinger and Benjamin be included. We are familiar with the well established rule to the effect that witnesses are not counted, but their testimony is weighed, and applying that rule, we are of the opinion that there was a recognized *537 boundary forming the north line of plaintiff’s land and the south line of defendant’s land, found by projecting a line to the west from the center line of the east-west gravel road, and that plaintiff had possession to that line until disturbed by defendant. It cannot be denied that plaintiff was in actual physical possession of that part of the land under fence and used as a pasture. The north line of the fence is on the line claimed by plaintiff. In the case of Rhodes v. Collier, 1949, 215 La. 754, 41 So.2d 669, 672, the court said:
“Counsel for defendant proclaims that plaintiffs cannot rely on the doctrine of civil possession because they allege in their petition that they were in real actual and corporeal possession of all of the land included within the limits stated in the title deed of Mrs. ■ Rhodes; in other words it is claimed ' that there is a discrepancy between the pleading and proof.
“We see no merit in this postulation. As long as plaintiffs have exhibited proof of possession, actual or constructive, and defendant’s disturbance, they are entitled to relief under the law notwithstanding their inability to establish actual physical possession of the entire tract.”
The line fixed by Mr. Messinger when he made his survey is approximately ninety feet south of the fence plaintiff had erected along the projected line looking to the west from the center line of the gravel road. It is, therefore, crystal clear that the testimony of Messinger is incorrect when he says that the land in controversy is the ninety foot strip colored in red on the plat he made, because the ninety foot strip is south of the line he established as the boundary between plaintiff and defendant. Defendant does not claim anything south of the line Messinger established, and has not disturbed plaintiff’s possession south of the line. Therefore, our original decree is in error in fixing the ninety foot strip colored red as the land in controversy.
Having found that there was a generally recognized boundary line between the lands of plaintiff and defendant, as above set forth, the case of Braley v. Crow, La. App.1950, 47 So.2d 355 is not applicable here. It is interesting to note, however, that while the Braley case was pending, Crow filed a suit to have the boundaries between the properties fixed, and was met with a plea of prescription of thirty years, which was sustained. Crow v. Braley, La. App.1950, 47 So.2d 357.
Defendant-appellee contends that because of a letter Dr. Bumgardner wrote to C. R. Foster authorizing him to take charge of his property and look after it, plaintiff could not complain that Foster trespassed on the property. Foster was a tenant of defendant. It could hardly be reasonably argued that authority to look after the property authorized Foster to deliver it over to defendant.
Further complaint is made of the allowance of attorney’s fees in the amount of $250, when plaintiff alleged only $150. The reason for allowance of $250 is that when Dr. Bumgardner was testifying as to attorney’s fees, he said he had paid $150, and if the case went to the Court of Appeal he was to pay $100 additional. No objection was made to this enlargement of the demand, and the result is that the pleadings were corrected, amended and enlarged by the introduction of this testimony. It is true that testimony admissible under the pleadings will not have the effect of enlarging the pleadings, but the testimony that plaintiff had agreed to pay an extra $100 was not admissible under the pleadings.
Defendant in a possessory action is not precluded from filing a boundary suit while a possessory action is pending. Crow v. Braley, La.App.1950, 47 So.2d 357.
'For the reasons assigned our original decree in this cause-is amended so as to enjoin defendant from interfering with plaintiff’s possession of Lot 7 of the NE14 of SE]4, Section 9, Township 21 North, *538 Range 11 East, East Carroll Parish, Louisiana, and particularly that land lying south of a line projected west from the center line of the east-west road designated on the plat marked Defendant-F, filed in the record in this case. In all other respects the judgment is reinstated and made the final judgment of this court.
AYRES, 5., is recused.